LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortes
Hagåtña, Guam 96910
Telephone: (671) 472-7332/7283
Telecopier: (671) 472-7334/7215

Attorneys for United States of America

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 08-00018 |
| Plaintiff, | |
| vs. | **UNITED STATES' OBJECTIONS TO MAGISTRATE'S ORDER GRANTING SEVERANCE OF TRIAL OF COUNT IV; AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| MARK ANTHONY BARTOLOME, | |
| Defendant. | |

Plaintiff, United States of America, by and through its undersigned attorneys, Marivic P. David, Assistant U.S. Attorney, hereby files its objection to the magistrate's Order granting severance of Count IV from the superseding indictment as to Defendant Mark Anthony Bartolome.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF THE CASE

On March 5, 2008, a grand jury returned an Indictment charging Ernesto P. Verdera and Mark Anthony Bartolome with bulk cash smuggling out of the United States in violation of 31 U.S.C. § 5332 and alleging forfeiture of the $810,631 involved in the offense. On May 1, 2008, a grand jury returned a Superseding Indictment charging both Verdera and Bartolome with

conspiracy to smuggle bulk cash out of the United States (Count I), bulk cash smuggling out of the United States (Count II) and a forfeiture allegation (Count III). Bartolome alone was also charged with importation of methamphetamine hydrochloride (Count IV).

On April 22, 2008, Defendant Verdera moved to sever his case from Defendant Bartolome's case and contended, among other things, that statements Bartolome made would implicate him in violation of Bruton v. United States, 391 U.S. 123 (1968). On May 5, 2008, in support of his motion for a separate trial, Verdera also claimed that the additional drug importation offense (Count IV) against Bartolome was prejudicial to him (Verdera) and would taint him in the eyes of the jury. The government proposed a redacted version of Bartolome's statements in order to comply with Bruton which both defendants objected. Bartolome filed his objection to the proposed redaction on June 16, 2008. Bartolome has filed no motion to sever Count IV from the superseding indictment.

After several hearings on Verdera's motion, on July 2, 2008, Magistrate Joaquin V.E. Manibusan granted Verdera's motion to sever his case, and also further ordered that the trial of Count IV be severed from the trial of Counts I through III, in effect, ordering three separate trials.

The government objects to the severance of Count IV from the superseding indictment and in effect to the two trials against Bartolome: one trial for Count IV and another trial for Counts I through III.

## II. STATEMENT OF FACTS

On the morning of February 28, 2008, Ernesto P. Verdera and Mark A. Bartolome, traveling together, arrived at the A.B. Won Pat Guam International Airport to board a Philippine Airlines flight scheduled to depart Guam at 6:00 A.M. and destined for Manila, Philippines. Earlier that morning Verdera checked in one large cardboard box and six pieces of luggage, and Bartolome checked in two pieces of luggage. Additionally, both Verdera and Bartolome each had two carry-on bags. After receiving their boarding passes they left their checked luggage with personnel from the Transportation Security Administration (TSA) for

-2-

inspection. TSA officers manually screened the oversized cardboard box and discovered a large amount of bundled cash concealed in the false bottom of the box.  The cash bundles found in the cardboard box were bound with rubber bands and wrapped in "Red Feather" brand carbon paper and duct tape.  Two packages of unused sheets of "Red Feather" carbon paper were found in a bag inside the cardboard box.  Verdera and Bartolome and all their luggage were detained for further inspection at the airport.

Special agents from the U.S. Immigration & Customs Enforcement (ICE) assisted Guam Customs officers with the investigation of the discovery of the bulk cash.  During the investigation, additional bundles of cash were found concealed in false compartments inside four of Verdera's checked suitcases.  Like the cash bundles found in the cardboard box, the cash bundles found in the suitcases were bound with rubber bands and  wrapped in "Red Feather" brand carbon paper and duct tape.  Another package of "Red Feather" carbon paper was also found in one of the four suitcases.  Drug paraphernalia and methamphetamine hydrochloride, packaged in two small plastic bags and with an aggregate net weight of 1.33 grams, were also recovered from Verdera's checked luggage.  One of the plastic bags containing the methamphetamine hydrochloride was concealed in a pink condom box inside one of Verdera's other two checked suitcases.

Under U.S. law, persons entering or departing the United States, transporting, attempting to transport, or causing to be transported more than $10,000 in or out of the United States, are required to report the transportation of currency or monetary instruments to the Department of Treasury by completing and submitting a form regarding the transportation of currency or monetary instruments.  Neither Verdera nor Bartolome submitted such a form.

Notably, Bartolome was found to be carrying, on his person, all nine Philippine Airlines baggage claim check tags for the nine pieces of luggage checked by Verdera and himself.  Bartolome, who was advised of his rights, waived his rights and voluntarily spoke with ICE Special Agents**.**  During the interview, Bartolome admitted that his belongings were mixed

-3-

together with Verdera's in all of the checked baggage. Bartolome stated that he has known Verdera for seven years and that he was in Guam to help Verdera transport the money. Bartolome further stated that he had helped Verdera count and bundle the cash in denominations of $10, $20, and $100 bills, that the money belongs to Verdera, that Bartolome does not know from whom Verdera obtained the money, and that Bartolome knew there was over $10,000 in the suitcases and that the money had to be reported. Bartolome said he told Verdera that authorities would catch them smuggling money if the money was concealed in checked baggage, as opposed to their hand-carried bags, but Verdera did not think they would get caught. Bartolome explained that he has traveled to Guam three times with Verdera and that he has been paid a total of approximately $6,000 to $7,000 to help Verdera smuggle bulk cash from Guam to Manila on two trips. Additionally, Bartolome has been provided with approximately $1,000 to $2,000 for food and other expenses on each of these trips. Bartolome claims he does not know what Verdera does with the money and believes the source of the money is drugs; although he is not certain. Bartolome admitted that he smokes methamphetamine and that he had placed about a gram amount of methamphetamine for personal use in a pink condom box. Bartolome said he has also seen Verdera smoke methamphetamine.

In a separate interview room, Verdera asked one of the ICE agents how much money was found. When the agent replied that he did not know, Verdera stated there was $700,000 to $900,000 in his luggage. A full accounting of the cash by bank personnel, at a bank where the cash was converted to an official bank check pending forfeiture proceedings, revealed a total of $810,631 in U.S. currency.

On the evening of February 28, 2008, arrest warrants were obtained for Verdera and Bartolome and they were placed under arrest. At the time of his arrest, Verdera stated that he is a German citizen and his occupation in Germany involves the import / export of vehicles and containers. Bartolome stated that he is a U.S. citizen and worked in Germany as an information support assistant with the United Nations Under Secretary / UN Framework Convention for

- 4 -

Climate Change. At the time of their arrests, two bank cards from Germany were seized from Verdera and Bartolome.

Also seized at the time of their arrests, were four cellular telephones from Verdera and a cellular telephone and a laptop computer from Bartolome. Search warrants obtained and executed on these items revealed, among other things, a file stored in Bartolome's computer consisting of a two-page fact sheet of "Crystal Meth" produced by the Crystal Meth Secretariat from the Ministry of Public Safety and Solicitor General in British Columbia, Canada, and text messages collected from one of Verdera's phones and Bartolome's phone revealing messages between them in Tagalog, one of the languages spoken in the Philippines.

### III. ARGUMENT

**A.  Count IV is properly joined with Counts I through III.**

Rule 8(a) of the Federal Rules of Criminal Procedure permits more than one offense to be joined against a single defendant if at least one of three tests is satisfied. Joinder is permitted if the offenses are (1) of the same or similar character; or (2) based on the same act or transaction; or (3) connected with or constitute parts of a common scheme or plan. Rule 8 is interpreted "broadly in favor of joinder." United States v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988); United States v. Lane, 474 U.S. 438 (1986).

**1.  Crimes of a same or similar character**

In determining whether counts are properly joined as being of a same or similar character, the Ninth Circuit in United States v. Jawara, 474 F.3d 565 (9th Cir. 2007), considered factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, and the modus operandi of the crimes. Id. at 578.

In the present case, all counts involve the smuggling of cash or drugs or contraband whether out of or into the United States. Contraband is defined as illegal or prohibited trade; smuggling; or goods that are unlawful to import, export, or possess. *Black's Law Dictionary (8th*

-5-

*ed. 2004).* All counts stem from common events that involve travel from the Philippines to Guam for illegal purposes and concealment as part of the modus operandi. Count IV is also temporally proximal to the other counts. As well all counts involve overlapping evidence which would have to be repeated in a separate trial, including the defendant's statements to law enforcement officers to the effect that he traveled from the Philippines to Guam to assist Verdera smuggle bulk cash to the Philippines, and the drugs found by law enforcement around the same time they discovered the bulk cash belonged to him which he brought from the Philippines.

In a case involving different charges, U.S. v. Fiorillo, 186 F.3d 1136 (9th Cir. 1999), cert.denied, 120 S.Ct. 991, the Ninth Circuit found offenses to be "of similar character" and properly joined where counts involved the same stored location and temporal discovery of explosives and hazardous materials. The defendant in Fiorillo was charged with receipt of explosives without a permit, wire fraud, and violations of hazardous waste laws and the court found the counts were properly joined together because the explosives and hazardous materials were stored in the same warehouse of the defendant, the discovery of the explosives led to the discovery of the hazardous materials, and both were being stored without proper permits. Id. at 1145.

In the present case, the bulk cash and drugs were stored in baggage tagged with Verdera's name but mixed with defendant's belongings, and the discovery of the bulk cash led to the discovery of the drugs or contraband.

**2.     Crimes based on the same act or transaction**

In determining whether multiple offenses are based on the same transaction, "'transaction' is to be interpreted flexibly and may comprehend a series of related occurrences." Fiorillo, 186 F.3d at 1145 (quoting United States v. Terry, 911 F.2d 272, 276 (9th Cir. 1990)). For example, in United States v. Lopez, 477 F.3d 1110, (9th Cir. 2007), the defendant was arrested after threatening an individual with a handgun which the defendant was prohibited from possessing because he was a convicted felon and an illegal alien. Following the stop of a vehicle in which the defendant was a passenger, a gun was found on the floorboard, cocaine was

-6-

located in the console, and a large amount of cash was found on the defendant's person. The Ninth Circuit held that joinder of counts were proper and the court did not abuse its discretion in refusing to sever for trial drug-related counts from counts such as being a felon and an illegal alien in possession of a firearm, possession of a firearm in furtherance of a drug-trafficking offense and illegal re-entry in the United States. The Court found that the offenses arose from the same act or transaction, the charges were extensively interrelated and there was significant overlap in the evidence for all charges. Id., at 1116-17.

Also, in United States v. Moyer, 313 F.3d 1082 (8th Cir. 2002), the defendant was charged with concealing a material fact from the Small Business Administration, bank fraud, carrying over $10,000 to a foreign country, embezzling, money laundering and criminal forfeiture. The court found joinder was proper because all the charges were parts of connected acts or transactions that arose out of defendant's purchase of a company and his attempt to conceal his non-investment in an SBA loan and his financial difficulties that ensued. Id. at 1085.

In the present case, Count IV is properly joined since all counts flowed from the defendant's decision to travel from the Philippines to Guam to help smuggle bulk cash. Part of Count IV is also alleged as Overt Act 9 in Count I. Also, the circumstances surrounding each of the counts are based on the events leading up to and following the defendant's arrest on February 28, 2008. The testimonial and physical evidence relating to the location and seizure of the bulk cash and drugs, the statements defendant made to law enforcement officers, and the defendant's arrest are common to all counts. As in Lopez and Moyer, here, the evidence regarding each of the charges is extensively interrelated and joinder is thus appropriate. Where the facts underlying joined offenses are "so intertwined that most of the evidence admissible in proof of one was also admissible in proof of the other," joinder is appropriate. United States v. Barney, 568 F.2d 134, 136 (9th Cir.), cert.denied, 98 S.Ct. 1586 (1978).

      **3.    Crimes connected with or constitute parts of a common scheme or plan**

-7-

Case 1:08-cr-00018   Document 76   Filed 08/01/2008   Page 7 of 10

In Jawara the Ninth Circuit explained that in determining whether counts arise from a common scheme or plan, the Court asks whether "[c]ommission of one of the offenses [ ] either depended upon [ ] or necessarily led to the commission of the other; proof of the one act [ ] either constituted [ ] or depended upon proof of the other." Id, 474 F.3d at 574, quoting United States v. Halper, 590 F.2d 422, 429 (2d Cir. 1978). The Court also noted, "[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." Jawara, 474 F.3d at 574, quoting United States v. Roselli, 432 F.2d 879, 899 (9th Cir. 1970). Such a relationship may be shown "by the existence of a common plan, scheme, or conspiracy." United States v. Felix-Gutierrez, 940 F.2d 1200, 1208 (9th Cir. 1991). Also, courts generally permit joinder under the common scheme or plan test where the counts "grow out of related transactions." Jawara, 474 F.3d at 574, quoting United States v. Randazzo, 80 F.3d 623, 627
(1st Cir. 1996).

Here, all counts flowed out of related transactions. Count IV alleges conduct based on acts or transactions that are connected with or constitute part of a common scheme or plan. The defendant's agreement to travel to Guam to assist in smuggling bulk cash - Count I - and his act of traveling as alleged in Overt Act 9 of Count I - necessarily led to the defendant's commission of the acts alleged in Count IV. The acts underlying all counts had a temporal connection of only a six-month time frame and the scheme of smuggling either bulk cash or drugs, whether to or from the United States, linked the charges together. See United States v. Anderson, 642 F.2d 281, 284 (9th Cir. 1981)(upholding joinder of drug charges with tax charges as they were based on the same series of events and the evidence on the counts overlapped).

**B.  Fed.R.Evid. 404(b) also supports the admissibility of Count IV evidence in a separate trial**

Evidence pertaining to Count IV including, but not limited to, the circumstances surrounding the discovery and location of drugs and paraphernalia in baggage tagged in Verdera's name and the defendant's subsequent admission that the drugs found were ones he

-8-

brought with him from the Philippines would be admissible in a separate trial pursuant to Fed.R.Evid. 404(b). Rule 404(b), a rule of inclusion, permits the introduction of evidence of other crimes, wrongs, or acts of the defendant as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evidence is admissible under Rule 404(b) if four elements are satisfied: (1) it must be offered to prove a material element of the offense for which the defendant is now charged; (2) if the other conduct is offered to prove intent, it must be similar to the charged conduct; (3) proof of the other conduct must be based on sufficient evidence; and (4) the other conduct must not be too remote in time. United States v. Howell, 231 F.3d 615, 628 (9th Cir. 2000); United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir. 1993); United States v. Jackson, 84 F.3d 1154, 1159 (9th Cir. 1996). See e.g., United States v. Irvine, 756 F.2d 708, 712 (9th Cir. 1985)(denying severance where drug evidence would have been admissible in a separate trial on the bribery count to show intent and ability to solicit bribe).

Here the Count IV evidence would be admissible as proof of motive, opportunity, preparation, plan, knowledge, or absence of mistake or accident. Evidence of defendant's contraband concealed among Verdera's baggage is probative of defendant's knowing participation with Verdera related to the bulk cash smuggling counts. Regardless of whether the defendant disputes the charges on grounds of identity or mistake, the government may still offer evidence on these grounds in light of its burden beyond a reasonable doubt. See e.g., United States v. Nelson, 137 F.3d 1094, 1107, cert.denied, 525 U.S. 901 (9th Cir. 1998)(noting defendant's state of mind is relevant even though it was not a disputed issue in the case).

The second element, similarity, is only required in cases where conduct is offered to prove intent. Arambula-Ruiz, 987 F.2d at 603. To the extent that the Count IV evidence tends to show knowledge, motive, opportunity, preparation, plan, or absence of mistake or accident, similarity is not required. The third element is satisfied because the defendant admitted to such conduct during his interview with agents. The fourth element, recency, is also satisfied since all

-9-

counts arose within a six-month time frame which is well within the time period permitted under Rule 404(b). Id. at 604 (five years not too remote).

### C. Prejudice under Fed.R.Crim.P. 14

Although joinder may be appropriate under Fed.R.Crim.P 8(a), Rule 14(a) recognizes that joinder may prejudice the defendant and that separate trials should be ordered. Zafiro v. United States, 506 U.S. 534, 538 (1993). The test under Rule 14 is whether joinder is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." Kinslow, 860 F.2d at 966-67, quoting United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976). To show enough prejudice to require severance, a defendant must establish "severe or compelling prejudice." Lane, 474 U.S. at 449 n.12. District courts often can mitigate any potential prejudice through "less drastic measures [than severance] such as limiting instructions . . . " Zafiro, 506 U.S. at 539.

Here, the defendant has not shown that he will suffer from undue prejudice by having all counts tried in one trial.

## IV. CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court find appropriate joinder of Count IV with Counts I through III, and order one trial as to defendant Mark Anthony Bartolome.

RESPECTFULLY submitted this 1st day of August 2008.

        LEONARDO M. RAPADAS
        United States Attorney
        Districts of Guam and CNMI

By:  /s/ Marivic P. David
        MARIVIC P. DAVID
        Assistant U.S. Attorney