# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Criminal Case No. 08-00018-001 |
| Plaintiff, | |
| vs. | **OPINION AND ORDER RE: MOTION FOR JUDGMENT OF ACQUITTAL** |
| **ERNESTO PAGLICAWAN VERDERA**, | |
| Defendant. | |

Before the court is Defendant's "Motion for Judgment of Acquittal" ("the Motion"). *See* Docket No. 246. The motion has been briefed, *see* Docket Nos. 246, 251, 253, and argued, *see* Docket No. 255. Having read the papers, heard the arguments, and considered the facts in the light of the law, the court hereby **DENIES** the Motion, for the reasons set forth below.

## I. FACTUAL BACKGROUND

On February 28, 2008, passengers ERNESTO PAGLICAWAN VERDERA and MARK ANTHONY BARTOLOME checked in to Philippine Airlines Flight Number 111, with service to Manila, at the Guam International Airport. Verdera checked seven bags, while Bartolome checked two.

Lead Transportation Security Officer (LTSO) T. Cruz began a routine security inspection of all checked luggage on the flight. One of Verdera's bags, a cardboard Home Depot box, was randomly selected for inspection. The box was heavy and would not fit into the Transportation Security Agency's Explosive Detection System, so it was screened manually. During the screening, LTSO Cruz noticed that the bottom appeared to have been tampered with and reconstructed. LTSO Cruz also found an unusual pad-like object wrapped in carbon paper in the

reconstructed area. The object consisted of a large amount of U.S. currency wrapped in carbon paper, newspaper and duct tape. Simultaneously searching another bag, Transportation Security Officer (TSO) Camacho found a similar package, also containing a large amount of cash, as well as some drug paraphernalia.

Verdera and Bartolome, together with their luggage, were turned over to Guam Customs and Contraband Enforcement Team (CET) Officer Eugene Igros. The men were then escorted to the Guam Customs area for further questioning and examination. The ensuing search of their luggage turned up 810,631 dollars in U.S. currency, small amounts of what was suspected to be "crystal meth," and drug paraphernalia.

At this point, Verdera and Bartolome were detained in separate rooms. Verdera asked USICE Special Agent (SA) E. Matanguihan how much money was found; SA Mantanguihan replied that he did not know. Verdera then voluntarily stated that his bags contained between $700,000 to $900,000. USICE SA A. Cepeda arrived and advised Verdera, in English, of his *Miranda* rights, but Verdera did not appear to understand. SA Matanguihan then translated the statement of rights into Tagalog, Verdera's language of choice, whereupon Verdera asked for an attorney. The interview stopped and no further questions were asked.

**II.     PROCEDURAL BACKGROUND**

Defendant Verdera was charged, in a superseding indictment, with: Conspiracy to Smuggle Bulk Cash out of the United States, in violation of Section 371 of Title 18, United States Code (Count 1); Bulk Cash Smuggling out of the United States, in violation of Sections 5332 and 5322 of Title 31, United States Code (Count 2); and Forfeiture Allegation, in violation of Section 5332(b)(2) of Title 31, United States Code (Count 3). *See* Docket No. 34.

He went to trial on March 31, 2009. *See* Docket No. 172. The jury returned a verdict of not guilty on Count 1, and guilty on Count 2. *See* Docket No. 186. The jury also affirmed a Special Verdict on Count 2, subjecting the cash seized to the forfeiture allegation. *See* Docket No. 191.

1         Immediately after the verdict was delivered, Defendant orally moved for judgment of
2 acquittal under Rule 29 of the Federal Rules of Criminal Procedure, and the court took the
3 motion under advisement. *See* Docket No. 235-3 at 41:17-22.
4         Defendant Verdera moved to change his attorney on June 2, 2009. *See* Docket No. 206.
5 The court granted this motion on June 5, 2009, and so Howard Trapp replaced F. Randall
6 Cunliffe as Defendant Verdera's attorney. *See* Docket No. 207.
7         Defendant Verdera renewed his motion for judgment of acquittal on December 7, 2009.
8 *See* Docket No. 246. After obtaining an extension of time, the Government opposed this motion
9 on January 11, 2010. *See* Docket No. 251. Defendant Verdera replied to the Government's
10 opposition on January 15, 2010. *See* Docket No. 253.

## III.     JURISDICTION AND VENUE

The court has jurisdiction in virtue of its "original jurisdiction . . . of all offenses against the laws of the United States." *See* 18 U.S.C. § 3231. Venue is proper because this district is where the offense was committed. *See* Fed. R. Crim. P. 18.

## IV.     APPLICABLE STANDARDS

On a Rule 29 motion for judgment of acquittal, the issue before the court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis added); *see also United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir. 2000). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1990).

Every reasonable inference from the evidence must be drawn in favor of the prosecution. *See Burks v. United States*, 437 U.S. 1, 16 (1978). Thus, the court must presume that all issues of witness credibility were resolved in favor of the prosecution. *See United States v. Bancalari*, 110 F.3d 1425, 1428 (9th Cir. 1997). Likewise, the court must presume that any conflicting inferences were resolved in favor of the prosecution. *Id*.

In short, the court has very limited latitude in ruling upon a motion for judgment of acquittal. It cannot weigh the evidence or assess the credibility of witnesses. *See United States v. Sparkman*, 235 F.R.D. 454, 455 (E.D. Mo. 2006), *aff'd*, 500 F.3d 678 (8th Cir. 2007); *see also United States v. Hoover-Hankerson*, 406 F. Supp. 2d 76, 85 (D.D.C. 2005) ("Under Rule 29, a court reviewing the sufficiency of the evidence must consider all the evidence submitted to a jury, 'regardless of whether it was properly admitted.'"). If it finds that the evidence rationally supports two conflicting hypotheses, one of which is guilt, it must not disturb the conviction. *Sparkman*, 235 F.R.D. at 455.

## V. ANALYSIS

Defendant contends that the evidence on record cannot support the jury's guilty verdict on Count 2, Bulk Cash Smuggling out of the United States. *See generally* Docket No. 246. Specifically, Defendant notes that one element of the offense is that "the defendant knew that a report of the amount transported was required to be filed with the Secretary of Treasury." Docket No. 246 at 12 (quoting 9th Cir. Model Crim. Jury Instr. 9.41 (2003)).[1] Defendant argues that the evidence on record cannot support a finding, beyond a reasonable doubt, that he had knowledge of this reporting requirement.

The court must reject this argument. The Government put forth essentially two theories of how Defendant could have had the knowledge in question: first, that Defendant learned of the reporting requirement *at* the airport; second, that Defendant knew of the reporting requirement *before* he arrived at the airport. A rational trier of fact *could have* found for the Government on either theory.

---

[1] Instruction 9.41 of the Ninth Circuit Model Criminal Jury Instructions pertains to offenses under 31 U.S.C. § 5316(a)), "Failure to Report Exporting or Importing Monetary Instruments." *See* 9th Cir. Model Crim. Jury Instr. 9.41 (2003). Defendant was *not* charged with a violation of Section 5316(a), but rather with violations of Sections 5332 and 5322, and the Ninth Circuit Model Criminal Jury Instructions do not provide a model instruction for such violations. However, an element of the court's actual jury instruction was that "the defendant knew at the time of the alleged concealment [that] he was required to file a report of the amount of money or other monetary instruments he was attempting to transport with the Secretary of the Treasury." Docket No. 178 at 18:13-15. Therefore, Defendant's use of Instruction 9.41 is not problematic, since the court used essentially equivalent language in its instructions.

1  The first theory is supported by the evidence that signs advising travelers of the currency
2  reporting requirement were posted at the Philippine Airlines check-in counter and at Gate 16, the
3  flight's departure gate.
4  With respect to the sign at the check-in counter, Defendant emphasizes its small size and
5  argues that "[t]he only inference that may be drawn from [the sign] is that the notice was not
6  seriously meant to be seen, certainly not by passengers standing in line to check in, certainly not
7  while it was covered by the baggage of passengers checking in." Docket No. 253 at 3. However,
8  this is not the "only" inference that may be drawn from the sign; another possible inference is
9  that Defendant actually saw the sign, notwithstanding its small size, and so gained knowledge of
10 the currency reporting requirements it discussed. This inference is bolstered by Mr. Ada's
11 testimony that Defendant's check-in process was slowed down by all the baggage he had to
12 check—a total of seven pieces, of which five were excess; a reasonable inference from this
13 testimony is that Defendant had more time at the check-in counter in which to see the sign.
14 With respect to the sign at Gate 16, Defendant argues that "[t]he inference, that the
15 defendant knew that a report of the amount transported was required to be filed with the
16 Secretary of the Treasury, does not follow from the premise, that a notice describing the currency
17 requirement was posted in the vicinity of Gate 16 where the defendant entered to board
18 *typically*." Docket No. 253 at 4 (emphasis in original). The implication here is that the
19 testimony of Mr. De Paula was that the sign may not actually have been there that day. However,
20 what Mr. De Paula said was that he did not recall seeing the sign there that day. Mr. De Paula
21 also said that while the sign does move around, its movement is a function of what airline is
22 using the gate. This could be taken to mean that if a Philippine Airlines flight was using the gate,
23 then the sign was there, whether he remembered it or not. Such an interpretation would be
24 bolstered by the testimony of SA Cepeda, which was that the sign was there that day, at the gate.
25 Or, if the jury decided that the testimony of Mr. De Paula was in conflict with the testimony of
26 SA Cepeda, the court must presume that the conflict was resolved in favor of the prosecution.
27 *See Bancalari*, 110 F.3d at 1428.
28

1   As for the second theory—that Defendant knew of the reporting requirement *before* he
2   arrived at the airport—this theory is supported by the evidence described above, as well as the
3   evidence that Defendant is an experienced international traveler; is involved in the import-export
4   business; flew from Guam to Manila at least two other times in the months preceding his arrest;
5   and took extraordinary measures to conceal the large amount of cash in his luggage—measures
6   including the construction of false bottoms and the use of carbon paper wrappings.  From this
7   evidence, the jury could infer that, even if Defendant did not see the warning signs on February
8   28, 2008, he had seen them on another of his trips, because his work in the import-export
9   business had attuned him to laws concerning the movement of cash.  The jury could have been
10  inclined to draw such an inference because it would then supply an explanation for the measures
11  Defendant had taken to conceal the large amount of cash in his luggage—i.e., concealment of
12  activity known to be illegal.  These are measures that a rational juror would certainly be curious
13  about, and would want explained.  Indeed, this is exactly what the Government argued at trial:
14  that the concealment measures were basically an indication of consciousness of guilt.  Defendant,
15  for his part, argued that they were simply intended to keep unscrupulous baggage handlers at bay.
16  Both inferences are possible.  However, the court must presume that any conflicting inferences
17  were resolved in favor of the prosecution.  *See Bancalari*, 110 F.3d at 1428.

18      In sum, viewing the evidence in the light most favorable to the prosecution, the court
19  finds that a rational trier of fact could have found the essential elements of the crime beyond a
20  reasonable doubt, on either of the two theories of knowledge put forward by the Government.
21  *See Jackson*, 443 U.S. at 318-19 (1979).  Thus, the jury could reasonably have arrived at its
22  verdict.  *See Mares*, 940 F.2d at 458 (9th Cir. 1990).  It follows that the court must deny
23  Defendant's motion.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion is **DENIED**.

Sentencing in this case is hereby set for 9:30 a.m. on March 17, 2010.

**SO ORDERED.**



        **/s/ Frances M. Tydingco-Gatewood**
            **Chief Judge**
        **Dated: Feb 22, 2010**